# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

REBECCA L.,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No. 1:21-cv-13848

**OPINION**

---

**APPEARANCES**:

Lauren S. Tovinsky
JACOBS, SCHWALBE & PETRUZZELLI, P.C.
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003

   *On behalf of Plaintiff.*

Philip R. Sellinger
United States Attorney
U.S. DEPARTMENT OF JUSTICE
   OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

Quinn Niblack-Doggett
Brian O'Donnell
Special Assistant United States Attorney
SOCIAL SECURITY ADMINISTRATION
     OFFICE OF GENERAL COUNSEL, REGION II
P.O. Box 41777
Philadelphia, PA 19101

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on an Appeal by Plaintiff Rebecca L.[1] ("Plaintiff") from a denial of Social Security disability benefits by the Commissioner of Social Security ("Commissioner"). (Compl., ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.     BACKGROUND

The Court recites herein only those facts necessary for its determination of this Appeal.

### A.  Administrative History

Plaintiff applied for supplemental security income benefits on June 28, 2018, and for adult disabled child benefits on July 30, 2018. (AR. 12). Both applications indicated a disability onset date of June 1, 2010, (AR. 12), with the child disability benefit period running from the alleged onset date to August 29, 2014. (AR. 19). Both claims were denied initially on January 31, 2019, and upon reconsideration on June 10, 2019. (AR. 12). Plaintiff filed a request for a hearing on July 26, 2019, which she attended with counsel on June 3, 2020. (AR. 12). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a decision dated November 30, 2020. (AR. 9). The Appeals Council denied Plaintiff's request for review on June 23, 2021, (AR. 1), and this Appeal followed. (Compl., ECF No. 1).

### B.  Plaintiff's Background and Testimony

Plaintiff was born in 1992 and was 27 years old at the time of the ALJ's hearing. (AR. 171). She is unmarried and lives with her parents. (AR. 171). She graduated high school and attended online career school but did not finish. (AR. 171–72). Plaintiff has no employment

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by her first name and last initial.

history. She was briefly employed by Amazon.com, Inc. in 2017, but did not complete the online training period. (AR. 172). Plaintiff testified to her impairments during the child disability period and supplemental security income period.

### 1. Child Disability Period

Plaintiff described several mental and physical impairments during the child disability period. She testified that her mental impairments included anxiety and early signs of obsessive-compulsive disorder ("OCD"), but that she was not prescribed medication for either condition during this period. (AR. 172–73, 183).

Plaintiff's physical impairments during this period included difficulty swallowing as well as neck and back pain that prevented her from carrying more than five pounds, walking long distances, standing for longer than five minutes, sitting still for more than forty-five minutes, and lifting her arms above her head. (AR. 174–76, 188). Further, she had weakness, tingling, and numbness in her hands. (AR. 188). Plaintiff also had hearing trouble requiring her to use hearing aids intermittently in both ears. (AR. 181).

### 2. Supplemental Social Security Income Period

Plaintiff testified that her impairments have worsened since the end of her child disability period. (AR. 175, 185–86). Plaintiff testified that, despite medication, she "struggle[s] with [anxiety] all the time" which affects her ability to get a job, attend post-secondary schooling, obtain a driver's license, and interact with people. (AR. 172, 183, 478). Plaintiff also testified that her OCD makes her "keep redoing things," wash her hands forty times a day, not wear shoes with laces, turns lights on and off, and "a bunch of other things." (AR. 182–89).

Plaintiff testified that she has generalized memory and attention issues. (AR. 184). For example, she places appointment reminders on her refrigerator and needs daily reminders to take

her medication. (AR. 184). She gets "distracted with the pain" and "can't focus on anything else." (AR. 184–85).

As for Plaintiff's physical impairments, her hearing issues persist and she sees a hematologist for anemia. (AR. 177, 181). While the condition has improved, she testified that she "still feel[s] the effects from it." (AR. 177). She feels tired "all the time," and speculates that the anemia has caused her to recently experience intermittent dizziness that goes away only when she sits down. (AR. 177–180).

Plaintiff also testified that she experiences lower back and neck pain. (AR. 185–86). The lower back pain radiates down her right leg to the point where it is "always numb" and she cannot feel her right foot. (AR. 185–86). Her neck pain causes headaches, tingling in her hands, and prohibits her from raising her hands above her head or turning her neck. (AR. 186–88). However, she can lift her hands from the front and side without pain. (AR. 187). She also explained how her neck and back pain make dressing herself and brushing her hair difficult. (AR. 186).

### C.  Medical History

Plaintiff has been examined by several medical professionals over the years and throughout the pendency of her disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

#### 1.  Dr. Suken Shah

Plaintiff visited Dr. Shah, her orthopedic surgeon, in November 2009. (AR. 759). During that visit, Dr. Shah noted that Plaintiff had spinal fusion surgery in 2004 and a history of Klippel-Feil syndrome. (AR. 759). Dr. Shah opined that Plaintiff is sore to palpation along the spinous processes, is sore with movement, has a baseline range of motion, has tenderness to palpation in the mid thoracic and lower spine, and can bend forward with some discomfort. (AR. 759). Dr.

Shah recommended rest and Tylenol. (AR. 759).

Plaintiff visited Dr. Shah again in October 2011 for complaints of radiating pain in her neck, ribcage, hand, and lower extremities. (AR. 777). Dr. Shah found that Plaintiff had limited spine motion due to her past surgery, but no pain with active motion at the time of the visit. (AR. 778). Dr. Shah found her spine to be well balanced, but that she had radiating pain down her right leg that was made worse by straight leg raise testing. (AR. 778). CT scans and an MRI taken before the examination showed segmentation anomalies of the cervical spine and evidence of canal stenosis, but no acute anomalies. (AR. 778). Dr. Shah recommended an ibuprofen regimen, physical therapy, and further diagnostic testing and imaging. (AR. 778).

### 2. Dr. Lewis Lazarus

In January 2019, Plaintiff visited Dr. Lazarus, a psychological consultative examiner with the Disability Determination Service. (AR. 1082). Dr. Lazarus opined that Plaintiff had an unspecified learning disorder, obsessive-compulsive disorder, an unspecified personality disorder, rule out social phobia ("social phobia"), problems with limited educational achievement, and problems with vocational training. (AR. 1083). Dr. Lazarus recommended a psychiatric follow-up and psychological counseling. (AR. 1083). He also opined that "[v]ocational assessment and rehabilitation may prove to be somewhat difficult," and that Plaintiff is unable to manage money "due to questionable reasoning and judgment." (AR. 1083).

### 3. Other Relevant Medical Evidence

Dr. Jefferey Campbell, a neurosurgeon, conducted an examination and MRI in 2011 for Plaintiff's back pain. (AR. 705, 710). Dr. Campbell diagnosed Plaintiff with scoliosis, Klippel-Feil deformity, myelopathy, and Chiari malformation and observed weakness in both hands. (AR. 705–710). Dr. David Clements, an orthopedic surgeon, also observed Plaintiff's back issues in

August 2018, and made similar findings to Dr. Campbell while further diagnosing Plaintiff with degenerative disc disease in the area below her spinal fusion. (AR. 1063–65). Dr. Clements recommended physical therapy and continued monitoring. (AR. 1065).

Dr. Juan Carlos Cornejo, a physical consultative examiner, noted that Plaintiff exhibits neck and spine mobility restrictions. (AR. 1091). Dr. Cornejo opined that Plaintiff could sit for a reasonable amount of time and could perform sedentary activity with "needed breaks" throughout the day. (AR. 1091). Two doctors, Dr. Jacques Gulekjian and Dr. Howard Goldbas disagreed; Dr. Gulekjian opined in January 2019 that Plaintiff was able to perform more than sedentary work, (AR. 219–20), and in in June 2019 Dr. Howard opined the same, (AR. 277–78).

In July 2015, Dr. Christiana Martin appears to be the first medical professional to evaluate Plaintiff's mental health issues but her notes and findings are poorly legible. (AR. 1380). Dr. James Sekel, a family physician, evaluated Plaintiff's mental health issues in 2018 and 2019, opining that Plaintiff's mental health was stable when on medication. (AR. 1390, 1400, 1405).

Two consultive examiners also revaluated Plaintiff's mental health. Dr. Amy Brams saw Plaintiff in April 2019 and opined that Plaintiff experienced anxiety and obsessive-compulsive disorder but was unable to make a conclusion as to Plaintiff's childhood mental health based on her medical history. (AR. 253–254). Dr. Joseph Wieliczko saw Plaintiff in January 2019, noted her lack of mental health care and opined that she had no significant limitations due to psychological factors. (AR. 215).

As to Plaintiff's remaining ailments, Dr. Carlos Madamba treated Plaintiff for anemia in late 2019. (AR. 1293). After several visits, Dr. Madamba prescribed iron tablets and recommended further monitoring of Plaintiff's symptoms. (AR. 1295).

Plaintiff was evaluated by many medical professions for her hearing issues which were

first observed by otolaryngologist Dr. Henry Cantrell in October 2009. (AR. 1249). In April 2014, Dr. Cantrell diagnosed Plaintiff with conductive hearing loss. (AR. 1149–51). In May 2014, Plaintiff was diagnosed by Dr. Stephen Gadomski with bilateral conductive hearing loss. (AR. 1145). In January 2019, Plaintiff's hearing loss was again evaluated by an ENT specialist, Dr. Rodolfo Diaz, (AR. 1104), who noted that Plaintiff's hearing loss in her left ear was significant. (AR. 1096). Finally, in April 2019, Dr. Raymond Briski opined consistently with the past medical findings regarding Plaintiff's hearing issues but failed to find any related exertional limitations. (AR. 256).

### 4. Third-Party Functioning Report

Plaintiff's mother submitted a Third-Party Functioning Report ("the Report") on August 13, 2018. (AR. 454). She stated that Plaintiff wakes up, takes her medicine, eats, does chores, uses the computer, feeds the dogs, and then watches TV until bed. (AR. 454). She also indicated that Plaintiff has no problems with personal care, does not need reminders for medicine, prepares her own meals, and can follow instructions "fine." (AR. 455–59). Further, she stated that Plaintiff goes outside daily, can leave the house "alone but prefers to be with others," shops, goes out to dinner, and spends time with friends daily. (AR. 457–58). Regarding limitations, Plaintiff's mother testified that Plaintiff cannot lift a water bucket to feed pets, does not drive, cannot walk more than 100 yards, and does not handle stress well. (AR. 455–460).

### D. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled as of the alleged onset date. *See* 20 C.F.R. § 404.1520(a)(4) (2021). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR. 13). At Step Two, the ALJ determined that

Plaintiff had several severe impairments, including;

> Chiari malformation, congenital kyphoscoliosis status-post posterior spinal fusion in December 2004, Klippel-Feil syndrome, multilevel disc disease of lumbar, thoracic, and cervical spine with multiple segmentation anomalies, lumbar radiculitis, mixed conductive and sensorineural bilateral hearing loss, chronic nonsuppurative otitis media, chronic mastoiditis, chronic ethmoidal sinusitis, impacted cerumen and bilateral tympanosclerosis involving a combination of structures, iron deficiency/anemia, anxiety, and obsessive-compulsive disorder (OCD).

(AR. 15–16). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR. 17–19).

At Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a),[2] with some additional exertional limitations. (AR. 20–33). The ALJ explained—

In January 2019,
(AR. 19–20).

At Step Five, the ALJ posed two hypotheticals to the vocational expert ("VE") asking whether an individual of Plaintiff's age, education, and work history with certain work limitations could perform jobs that existed in substantial numbers in the national economy. (AR. 194, 96). One hypothetical incorporated Plaintiff's RFC during the child disability period, and the other since that period ended. (AR. 194, 96). In response to both hypotheticals, the VE identified two jobs that Plaintiff could perform: (i) a Document Scanner, DOT 249.587-018, a sedentary SVP-2 job; and (ii) a Collator, DOT 653.687-010, a light SVP-2 job. (AR. 195). Based on the testimony

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. 404.1567(a).

of the VE and the VE's explanation of any discrepancies between the identified jobs and Plaintiff's RFC, the ALJ found that Plaintiff could perform these two jobs that existed in significant numbers in the national economy. (AR. 27). Thus, the ALJ determined that Plaintiff had not been under a disability as defined in the Social Security Act since her alleged onset date. (AR. 28).

## II.   <u>LEGAL STANDARD</u>

When reviewing a final decision of an ALJ regarding a claimant's disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). That analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

## III.    DISCUSSION

On appeal, Plaintiff raises several overlapping errors in the ALJ's step-by step analysis: (1) the ALJ failed to properly adjudicate the entire period of alleged disability; (2) the ALJ

improperly found certain mental and physical impairments as non-severe at Step Two; (3) the ALJ failed to conduct a proper Psychiatric Review Technique ("PRT") at Step Three; (4) the ALJ failed to account for all of Plaintiff's limitations in her RFC at Step Four; (5) the ALJ failed to properly evaluate the opinions from Dr. Lazarus and Dr. Shah; (6) the ALJ failed to properly evaluate the testimony of Plaintiff and Plaintiff's mother; and (7) the ALJ failed to carry the Commissioner's burden at Step Five. Lastly, Plaintiff alleges the ALJ's decision is invalid because of the apparent unconstitutionality of the Social Security Act's removal provision in 42 U.S.C. § 902(a)(3). The Court will address each alleged error in turn. For the reasons that follow, the Court affirms the ALJ's decision.

### A.  The ALJ Properly Reviewed the Relevant Disability Period.

Plaintiff argues that the ALJ failed to properly adjudicate the entire alleged disability period by failing to analyze the child disability benefit period under "the Agency's childhood disability rules found in Section 1614(a)(3)(C)(i)." (Pla. Br., ECF No. 11 at 15). Although Plaintiff appears to abandon this argument on reply, the Court finds that the ALJ properly reviewed the entire relevant disability period under the appropriate standards.

To be entitled to review under the child disability standard, a claimant must file an application before turning 18. 20 C.F.R. § 416.924(f). Here, Plaintiff attained the age of 18 in 2010 and did not file her application for disability benefits until 2018. (AR. 1). Thus, because Plaintiff was already 18 years old at the time she filed her application, the ALJ properly reviewed Plaintiff's child disability benefit period under the adult disability standard.

### B.  The ALJ Committed No Harmful Error at Step Two.

Plaintiff next argues that the ALJ erred at Step Two in assessing the severity of certain mental and physical impairments. (Pla. Br., ECF No. 11 at 15). Specifically, Plaintiff argues that

her learning disorder, personality disorder, social phobia, acid reflux, history of urinary tract infections ("UTI"), and asthma should have been identified as severe impairments. (Pla. Br., ECF No. 11 at 15). Plaintiff's argument is unavailing.

At Step Two, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities." 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Third Circuit has held that the Step Two inquiry is a de minimis screening device used to cast out meritless claims. *Id.*; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. *Bowen*, 482 U.S. at 146. Moreover, "even if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." *Naomi Rodriguez v. Berryhill*, No. 18-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019) (citing cases). Applying these standards, the Court finds no harmful error in the ALJ's Step Two analysis.

With respect to Plaintiff's acid reflux, asthma, and history of UTIs, the ALJ relied on substantial evidence in finding there was "no evidence these impairments imposed any durational limitation on [Plaintiff's] ability to perform work activity." (AR. 16). The ALJ found Plaintiff's acid reflux to be "transitory and non-durational and therefore, non-severe." (AR. 16). As to Plaintiff's history of UTIs, the ALJ found that Plaintiff "may have an increased urgency to use a

restroom," but that "this does not appear to be constantly and in the event of intermittent bouts of UTIs, normal breaks already allowed at all jobs, would more than accommodate this issue." (AR. 16). As to Plaintiff's asthma, the ALJ found that Plaintiff "has had minimal treatment" for asthma and that Plaintiff's medical records "indicated no pulmonary issues with normal breath sounds and normal lung function." (AR. 16). Although Plaintiff directs the Court's attention to other evidence in the record that may support a different finding as to the severity of these physical impairments, it is not the Court's role to re-weigh the evidence. *See Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). The Court is satisfied that the ALJ's Step Two analysis as to finding these physical impairments were not severe was based on substantial evidence. Moreover, even though the ALJ did not identify these physical impairments as severe, she sufficiently addressed them in Plaintiff's RFC by limiting Plaintiff to sedentary work with "momentary change[s] in position" every fifteen minutes. (AR. 20); *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("remand is not required [when a potentially severe impairment is omitted] because it would not affect the outcome of the case.").

The Court similarly finds no harmful error with respect to the ALJ's Step Two analysis of Plaintiff's learning disorder and social phobia. In discussing these mental impairments, the ALJ noted that other than the opinion of Dr. Lazarus, "there is no indication . . . that any other qualified mental health professional has ever diagnosed these [mental impairments] as severe or non-severe," and that "there is no other mention . . . of treatment for social phobia, a personality disorder or a learning disorder." (AR. 16). The Court is satisfied that these observations and rationale provided substantial evidence for the ALJ's determination that Plaintiff's learning disorder and social phobia were non-severe and "not medically determinable." (AR. 16).

However, with respect to personality disorder, the Court agrees with Plaintiff that the ALJ erred by not giving any consideration to Dr. Brams' April 2019 psychological evaluation that identified personality disorder as one of Plaintiff's severe impairments. (AR. 273). Notwithstanding this error, the Court finds no basis to remand because the ALJ went on to consider the impact of Plaintiff's personality disorder at subsequent steps of the sequential analysis. *See Washington v. Saul*, No. 20-662, 2021 WL 2514691, at *6 (D.D.C. June 18, 2021) (holding that "because it is clear that the ALJ went on to consider the impact of the symptoms of Plaintiff's [mental impairment] in evaluating the remaining steps in the sequential analysis, any error committed by the ALJ in finding that [the mental impairment] was not a medically determinable impairment was harmless.") (internal citations and quotations omitted). Specifically, at Step Three, even though the ALJ found Plaintiff's personality disorder to be non-severe and not medically determinable, she still assessed Plaintiff's mental impairments under Listing 12.08 (personality and impulse control disorders), 20 C.F.R. § Pt 404, Subpt. P, App. 1. (AR. 17). Moreover, at Step Four, Plaintiff's RFC accommodated any purported limitations caused by personality disorder by limiting Plaintiff to work in a "low stress" job with "simple and routine instructions" and "only occasional interaction with supervisors, co-workers, and general public." (AR. 19–20); *see Salles*, 229 F. App'x at 145 n.2; *Rutherford*, 399 F.3d at 553. Accordingly, the Court finds no basis for disturbing the ALJ's determination as to this issue because it would not affect the outcome of Plaintiff's claim.

### C.  The ALJ Properly Applied the Psychiatric Review Technique at Step Three.

Plaintiff next argues that the ALJ improperly conducted the PRT evaluation because the "evidence suggests a finding of at least moderate limitations in [Plaintiff's] ability to understand, remember, or apply information." (Pla. Br., ECF No. 11 at 19). The Court disagrees.

When there is evidence of a mental impairment that allegedly prevents a disability claimant from working, the Commissioner is required to evaluate the claimant's mental impairments by use of a PRT. *Perez v. Saul*, No. 19-2446, 2020 WL 1984901, at *2 (E.D. Pa. Apr. 27, 2020) (citing 20 CFR § 404.1520a). An ALJ is not required to complete a PRT form, *Izzo v. Comm'r of Soc. Sec*, 186 F. App'x 280, 285–86 (3d Cir. 2006), but "the regulations do require an ALJ's decision to include the relevant findings and conclusions," *Perez*, 2020 WL 1984901, at *2 (citing 20 CFR § 404.1520a).

As part of this analysis, the ALJ must determine "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 203 (3d Cir. 2019). Here, the ALJ identified Listings 12.06 (anxiety and obsessive-compulsive disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06, and 12.08 (personality and impulse-control disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08, as applicable, but concluded that Plaintiff's impairments were not severe enough to meet those Listings. An impairment meets Listings 12.06 or 12.08 when the criteria in both paragraphs A and B are satisfied, or when the criteria in paragraph C are satisfied. *Id*. §§ 12.04, 12.06.

The paragraph B criteria of Listings 12.06 and 12.08 are met when a claimant has an extreme limitation of one, or a marked limitation of two of the following four mental functional areas:  the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.

Plaintiff contests the ALJ's finding of only a *mild* limitation in the first area of function— the ability to understand, remember, or apply information. (Pla. Br., ECF No. 11 at 19). In support, Plaintiff argues that "there is overwhelming evidence that suggests more than mild limitation" in

this functional domain. (Pla. Br., ECF No. 11 at 19). However, the Court's role is not to re-weigh the evidence, but to determine whether the ALJ's decision was supported by substantial evidence. In this respect the ALJ found,

> In understanding, remembering, or applying information, the claimant has a mild limitation. The claimant's mother reported in August 2018 that her daughter had no difficulties following written or spoken instructions. [Ex.5E]. A psychological consultative examination from January 2019 noted that the claimant's recent and remote memory both seemed mildly to moderately impaired. [Ex.13F]. There is no indication from the record that the claimant has had any other complaints related to her ability to understand or remember information.

(AR. 18). Based on the ALJ's analysis above, the Court finds that the ALJ relied on substantial evidence—"more than a mere scintilla"—to conclude that Plaintiff's ability to understand, remember, or apply information is only mildly limited. *Richardson*, 402 U.S. at 401.

### D. The ALJ Properly Accounted For Plaintiff's Impairments in Plaintiff's RFC.

Plaintiff next argues that the ALJ erred by failing to incorporate "needed breaks" arising from her physical and mental impairments in her RFC. (Pla. Reply Br., ECF No. 17 at 2–3). Plaintiff argues that the ALJ should have included "needed breaks" in Plaintiff's RFC because "Dr. Cornejo found that the Plaintiff would [be] able to do sedentary activity with underlined needed breaks." (Pla. Br., ECF No. 11 at 20) (emphasis in original). Plaintiff also argues that incorporating "needed breaks" would be consistent with Plaintiff's moderate limitation in the ability to concentrate, persist, and maintain pace. (Pla. Br., ECF No. 11 at 19). Although the Commissioner did not directly address this issue in her opposition brief, the Court nonetheless finds Plaintiff's argument unavailing.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc.*

*Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence; however, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason").

Here, although the ALJ did not expressly include "needed breaks" in Plaintiff's RFC, she did include an accommodation of "momentary change[s] in position" every fifteen minutes. (AR. 20). In explaining this accommodation, the ALJ noted that the RFC "accommodated the claimant's alleged need to take a short walk every 15 minutes because of pain while sitting," and "would allow for an individual to take adequate and frequent standing and walking breaks." (AR. 25). Moreover, with respect to Plaintiff's history of UTI's, the ALJ determined that "normal breaks already allowed at all jobs, would more than accommodate" Plaintiff's need for frequent bathroom breaks. (AR. 16). Accordingly, the Court finds that the ALJ properly accounted for Plaintiff's need for frequent breaks in her RFC.

### E.  The ALJ Properly Evaluated the Medical Evidence.

Plaintiff next argues that the ALJ failed to properly evaluate the medical opinions of Dr. Lazarus and Dr. Shah. (Pla. Br., ECF No. 11 at 23). With respect to Dr. Lazarus, Plaintiff alleges that the ALJ failed to consider Dr. Lazarus' findings that: 1) vocational assessment of Plaintiff's disability claim may prove to be somewhat difficult; 2) Plaintiff was not capable of fully and entirely managing her own funds due to her questionable judgment; and 3) Plaintiff was

functioning with a borderline-to-low average fund of knowledge. (Pla. Br., ECF No. 11 at 24–25). With respect to Dr. Shah, Plaintiff alleges that the ALJ failed to properly consider Dr. Shah's findings of several physical impairments caused by her pain. (Pla. Br., ECF No. 11 at 24–25). Plaintiff argues that a proper evaluation of Dr. Lazarus' and Dr. Shah's opinions would have resulted in greater limitations in Plaintiff's RFC. Upon review of the ALJ's Decision, the Court finds no error in the ALJ's evaluation of these medical opinions.

"An ALJ 'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'" *Tedesco v. Comm'r of Soc. Sec.*, 833 F. Appx. 957, 961 (3d Cir. 2020) (quoting *Burnett v. Comm'r of Soc. Sec. Admin*., 220 F.3d 112, 121 (3d Cir. 2000)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Moreover, under new agency regulations, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a).

Here, with respect to the ALJ's evaluation of Dr. Lazarus' January 2019 medical opinion, the Court finds no error. Indeed, the ALJ extensively discussed Dr. Lazarus' findings, accepting some and rejecting others. For example, the ALJ discussed Dr. Lazarus' assessment when determining the severity of Plaintiff's mental impairments at Step Two, (AR. 16), when determining whether Plaintiff's impairments meet or medically equal a Listed Impairment at Step Three, (AR. 18), and when determining Plaintiff's RFC at Step Four, (AR. 26). As to Dr. Lazarus' assessment that Plaintiff would be unable to manage her own funds, the ALJ found such assessment inconsistent with the testimony of Plaintiff's mother that Plaintiff "had no trouble

managing her money." (AR. 18). As to Dr. Lazarus' finding that a vocational assessment of Plaintiff's disability claim may prove to be somewhat difficult and that Plaintiff was functioning with a borderline-to-low general fund of knowledge, Plaintiff presents no argument as to how the ALJ's consideration of such findings would have altered the outcome of Plaintiff's disability claim. *See Holloman v. Comm'r of Soc. Sec.*, 639 F. Appx. 810, 814 (3d Cir. 2016) (holding that a plaintiff bears the burden to prove that an error by the ALJ was harmful).

The Court similarly finds no error in the ALJ's evaluation of Dr. Shah's medical opinions. The ALJ extensively discussed Dr. Shah's findings when determining Plaintiff's RFC at Step Four. (AR. 20–21). Although the ALJ did not specifically discuss the weight given to Dr. Shah's opinions, she incorporated Dr. Shah's diagnoses of congenital kyphoscoliosis status-post spine fusion, Klippel-Feil syndrome, and back pain, (AR. 777), among Plaintiff's severe impairments, (AR. 15). Further, Plaintiff merely recites Dr. Shah's medical findings but fails to explain how the ALJ's failure to specifically comment on Dr. Shah's credibility or consideration of the medical evidence constitutes harmful error. (*See* ECF No. 11 at 24). Accordingly, the Court finds no basis to disturb the ALJ's Decision on this issue.

### F. The ALJ Properly Considered Opinion Evidence from Plaintiff and Plaintiff's Mother.

Plaintiff next argues that the ALJ failed to adequately consider her own subjective statements of her symptoms, and that she improperly accorded only some weight to the Third-Party Functioning Report (the "Report") submitted by her mother. (Pla. Br., ECF No. 11 at 25). In response, the Commissioner contends that although the ALJ must consider the Report and Plaintiff's subjective complaints, the ALJ may discount such statements when they are unsupported by medical evidence. (Comm. Br., ECF No. 16 at 35). The Commissioner asserts that the ALJ properly evaluated the Report and Plaintiff's own testimony against the medical evidence

of the record and the Court agrees.

Statements of the individual concerning his or her symptoms must be carefully considered, but an ALJ is not required to credit them. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011). "While an ALJ should consider an applicant's subjective complaints, . . . the applicant bears the burden of producing medical evidence to support those complaints." *Arroyo v. Comm'r of Soc. Sec.*, 82 F. App'x 765, 768 (3d Cir. 2003) (internal citation omitted). Moreover, "the Third Circuit instructs that an ALJ is free to 'discount' lay witness testimony but must explain the reasons for doing so." *Hendry v. Comm'r of Soc. Sec.*, No. 16-8851, 2018 WL 4616111, at *15 (D.N.J. Sept. 26, 2018) (collecting cases).

Here, the Court first finds that the ALJ did not err in the way in which she evaluated Plaintiff's subjective statements of her symptoms. Although the ALJ acknowledged Plaintiff's subjective complaints, she ultimately found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR. 26). The ALJ described the evidence of the record that she relied on in reaching this conclusion, and also explained the various weight she accorded to different pieces of evidence. (AR. 16, 18, 22, 25, 26).

Similarly, the ALJ correctly identified several inconsistencies between the Report and Plaintiff's own statements. For example, Plaintiff's mother stated that Plaintiff has no problems with personal care, does not need reminders for medicine, can follow instructions "fine," can go outside daily, shops and goes out to dinner, and spends time with friends daily. (AR. 455–59). However, Plaintiff's testimony claims that she has difficulty dressing herself, (AR. 186), needs daily reminders to take her medication, (AR. 184), cannot maintain attention, (AR. 184–85), does not interact with people and rarely goes out, (AR. 478).

Additionally, Plaintiff does not meaningfully challenge the ALJ's analysis of the evidence cited in support of her decision. Rather, Plaintiff again attempts to direct the Court to contrary evidence in the record that supports Plaintiff's subjective statements pertaining to her symptoms. However, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (internal citation omitted). Here, the ALJ reviewed Plaintiff's subjective complaints and her mother's Report but weighed the same against the conflicting evidence in the record and cited to that conflicting evidence in explaining her decision. *See Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 735 (3d Cir. 2010). Accordingly, there was no error. *See Zirnsak v. Colvin*, 777 F.3d 607, 613 (3d Cir. 2014).

## G. The ALJ's Step Five Findings Are Supported By Substantial Evidence and Consistent With The RFC.

Plaintiff next argues that the ALJ erred at Step Five by failing to identify and resolve several discrepancies between Plaintiff's RFC, the VE's testimony, and the Dictionary of Occupational Titles ("DOT") descriptions of the collator and document scanner jobs. (ECF No. 11 at 29). Specifically, Plaintiff argues that the ALJ failed to resolve conflicts between the exertion, reasoning, noise, and interaction levels of the collator and document scanner jobs and Plaintiff's RFC limitations. (Pla. Br., ECF No. 11 at 29). The Court disagrees.

During a VE examination, "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir.2002)). The presence of inconsistencies is permissible if the ALJ's decision is otherwise supported by substantial evidence. *Rutherford*, 399 F.3d at 558; *Zirnsak*, 777 F.3d at 617.

Here, the ALJ properly instructed the VE to explain any inconsistencies between the VE's testimony and the DOT descriptions. (AR. 193–94, 203–04). Upon review of the record, the Court finds that the ALJ sufficiently resolved each alleged discrepancy.

1. The Collator Exertion Level

Plaintiff argues that the "light" exertion level required for the Collator job is inconsistent with Plaintiff's RFC limiting Plaintiff to "sedentary" work, and that the ALJ failed to resolve this conflict. The Court disagrees.

The ALJ adequately addressed this discrepancy in her Decision,

> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert explained that a hypothetical individual with the same age, education and residual functional capacity as the claimant can perform the job as collator because that job does not require much mobility or exceed the sedentary lifting requirement. She based this discrepancy on her experience.

(AR. 28). Based on this explanation, the Court finds that the ALJ adequately resolved the exertion level discrepancies between the collator job and Plaintiff's RFC.

Moreover, to the extent that the ALJ incorrectly listed the collator job as sedentary in her Decision, and merely cited the VE's "personal experience" as evidentiary support for the resolution of the discrepancy, the Court finds any such error to be harmless. Indeed, the ALJ need only provide one job that a claimant can perform that exists in significant numbers in the national economy. *Penrose v. Comm'r of Soc. Sec.*, No. 20-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020); *see also Jones v. Barnhart*, 364 F.3d 501, 506 (3d Cir. 2004) (holding that cited jobs are merely examples and may be above a claimant's established exertion level if other jobs cited are within the exertion level). Here, because the ALJ provided the alternate job of document scanner that is within Plaintiff's exertional level that exists in substantial numbers within the

21

national economy, there is no reversible error.

### 2. Noise Intensity Levels

Plaintiff next argues that the DOT's noise intensity levels for collator and document scanner conflict with Plaintiff's RFC which limits Plaintiff to work in an environment with a noise intensity of "moderate or quieter." (AR. 19). This argument is unavailing as the DOT lists the noise intensity level for both document scanner and collator as "moderate," which is within Plaintiff's RFC limitations. (AR. 42, 108). Thus, there is no discrepancy that requires explanation.

### 3. Interaction Levels

Plaintiff next argues that the DOT's listed interaction levels for collator and document scanner conflict with Plaintiff's RFC limiting Plaintiff to only "occasional interaction" with other people. (AR. 20). The Court similarly finds this argument unavailing.

Other Courts have encountered this question—whether an interaction level during a probationary training period that briefly exceeds occasional undermines a plaintiff's RFC. *See, e.g.*, *Torres v. Comm'r of Soc. Sec.*, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015). "Indeed, courts routinely find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public." *Id.* (citing *Butler v. Colvin*, 2015 WL 570167 (D.N.J. Feb. 11, 2015)).

Here, the Court likewise finds that an interaction level that briefly exceeds Plaintiff's RFC during a probationary training period for unskilled positions is not reversible error. The VE testified that the interaction level during the temporary training period for these jobs *may* "exceed occasional" and that the training period generally lasts "about 90 days, but it does vary." (AR. 203). Given this explanation, there appears to be a range of interaction between occasional and more frequent in these jobs based on the VE's experience, but there is no apparent conflict with

the DOT's determination which only presents "maximum requirements of occupations as generally performed." S.S.R. 00-4p. Thus, there is no discrepancy that would have required further explanation by the ALJ regarding the interaction level during an unskilled job's probationary period.

4. <u>Reasoning Level</u>

Plaintiff next argues that there are unresolved discrepancies in the reasoning levels for the collator and document scanner jobs and Plaintiff's RFC. The Court disagrees. First, with respect to the collator job, no discrepancy exists between the RFC and the DOT description. The RFC limits Plaintiff to "simple and routine instructions in a low stress job," and the collator job requires nothing more.[3] The VE also testified that the collator job is within Plaintiff's RFC because "the majority of unskilled work" is reasoning level two, and one "would just need to have a general understanding of organization to prepare the documents, but they're not reading [and] they have no interaction with the content of the document." (AR. 199–200).

As to the document scanner job, which is reasoning level three, "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014). Even so, several courts in this circuit have found that there is no conflict between reasoning level three and an RFC requiring "simple and routine" work "where the record established that the claimant in question could perform a level 3 reasoning job, despite a limitation to simple work." *See, e.g.*, *id.* (citing several facts in the record about claimant's education and daily activities that are not inconsistent with reasoning level three jobs despite a limitation to

---

[3]  The Collator job requires performing "few *routine and uninvolved* tasks over and over again." (AR. 113) (emphasis added).

"simple and routine work"); *Clawson v. Astrue*, No. 11-294, 2013 WL 154206, at *6 (W.D. Pa. Jan. 15, 2013); *Simpson v. Astrue*, No. 10-2874, 2011 WL 1883124, at *7 (E.D. Pa. May 17, 2011). Moreover, the jobs cited by the VE are not an exhaustive list of the jobs a claimant can perform. *Rutherford*, 399 F.3d at 557.

Here, the VE addressed the issue regarding the document scanner reasoning level, explaining that the heightened level is due to technology use that is "simple routine and repetitive once it's mastered within 30 days." (AR. 199). Further, as in *Zirnsak*, there exists evidence regarding Plaintiff's past that she can perform the document scanner job as the VE explained. Plaintiff has at least a high-school education. (AR. 27). She has experience with computers and includes it as one of her hobbies. (AR. 455-56). She was also prepared to enter medical coding school before deciding against it. (AR. 21). However, to the extent that the reasoning level is above Plaintiff's RFC, this error would be harmless because the collator job is adequately within Plaintiff's capabilities.

### H. Plaintiff Was Not Harmed By The Constitutional Defect In The Removal Provision of the Social Security Act.

Plaintiff finally asserts that the ALJ's decision is constitutionally defective because the Commissioner under whom the ALJ issued her final decision serves a longer term than the President and is removable only "for cause," thereby violating the separation of powers.[4] (Pla. Br., ECF No. 17 at 17). Plaintiff also argues the Appeals Council lacked a lawful delegation of authority to adjudicate her claim. (Pla. Br., ECF No. 17 at 17). Both parties agree, and it is generally well-settled, that the "for cause" removal provision violates separation of powers by unconstitutionally

---

[4] The Social Security Act provides that, "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 USC § 902(a)(3).

restricting the President's ability to remove an executive officer. *See Collins v. Yellen*, 141 S. Ct 1761, 1787 (2021) (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2021) ("the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer")); *see also Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542 (O.L.C.). The parties dispute whether the presence of the removal provision in 42 U.S.C § 902(a)(3) caused Plaintiff compensable harm. The answer is no.

First, Plaintiff provides no basis that the ALJ here was appointed by a Commissioner subject to the removal restrictions in 42 U.S.C. § 903(a)(3). An Acting Commissioner can be removed for any reason, and thus does not have the same removal restrictions as a Commissioner. *See Collins*, 141 S. Ct. at 1781 (holding that the plaintiff was not harmed by the constitutional defect because the ALJ was appointed by an Acting Director who enjoyed no protections from the removal provision of federal agency). Considering this, and because Plaintiff in this case does not assert that the ALJ here was improperly appointed, Plaintiff's argument is unpersuasive. *See also Boger v. Kijakazi*, No. 20-00331, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct. 28, 2021) (finding a removal restriction argument inapplicable "because ALJ Howard was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").

Second, Plaintiff's argument that the Appeals Council lacked a lawful "delegation of authority" to adjudicate her claim, (Pla. Br., ECF No. 17 at 17), has consistently been rejected by other district courts and this Court sees no reason to decide otherwise. *See Lewis v. Comm'r of Soc. Sec.*, No. 21-1202, 2022 WL 1136687, at *6 (E.D. Pa. Apr. 18, 2022) (rejecting plaintiff's delegation of authority argument where "there [was] no indication that . . . the ALJ or Appeals Council members exercising authority on [the Commissioner's] behalf were appointed in violation

of the Appointments Clause or that they exceeded the scope of their authority"); *see also Wicker v. Kijakazi*, No. 20-4771, 2022 WL 267896, at *10 (E.D. Pa. Jan. 28, 2022); *Johnson v. Kijakazi*, No. 21-2372, 2022 WL 2342569, at *14 (E.D. Pa. June 28, 2022).

Third, Plaintiff has not shown that the unconstitutional removal provision in 42 U.S.C. § 903(a)(3) inflicted compensable harm. *See Boger*, 2021 WL 5023141, at *3 (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all actions taken by the Commissioner—and in turn his appointed ALJ's—are void due to the unconstitutional removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *see also Robinson v. Kijakazi*, No. 20-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (same).

Indeed, Plaintiff cannot show how the President's supposed inability to remove the Commissioner without cause might have affected any ALJ's disability benefits decision, much less the decision on her specific claim. The ALJ's decision was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. There is simply no plausible nexus between the adjudication of Plaintiff's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Moreover, while it is true that President Biden hesitated to remove Commissioner Saul at the onset of his term due to the removal provision in § 902(a)(3), *see Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542 (O.L.C.) (confirming that the SSA removal provision is unconstitutional after *Collins*), Plaintiff's claims had exhausted each stage of the review process on November 30, 2020, well before President Biden took the oath of office and gained constitutional authority to remove Commissioner Saul and appoint a new Commissioner.

Accordingly, Plaintiff has not alleged any connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff benefits, and "nothing commands us to vacate the decisions below on that ground." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021). Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order accompanies this Opinion.

Date:   July 30, 2022

_____
**Christine P. O'Hearn**
**United States District Judge**